UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

**CAMERON K.,**

**Plaintiff,**

    **v.**

**COMMISSIONER OF SOCIAL
SECURITY,**

**Defendant**.

Case No. 1:20-cv-001633-TPK

OPINION AND ORDER

## OPINION AND ORDER

    Plaintiff filed this action under 42 U.S.C. §405(g) asking this Court to review a final decision of the Commissioner of Social Security.  That final decision, issued by the Appeals Council on October 1, 2020, denied Plaintiff's application for supplemental security income.  Plaintiff has now moved for judgment on the pleadings (Doc. 13), and the Commissioner has filed a similar motion (Doc. 14 ).  Plaintiff has also filed a motion for leave to cite additional authority (Doc. 16), which the Commissioner also opposes (Doc. 17).  For the following reasons, the Court will **DENY** Plaintiff's motion for judgment on the pleadings and for leave to cite additional evidence, **GRANT** the Commissioner's motion for judgment on the pleadings, and **DIRECT** the Clerk to enter judgment in favor of the defendant Commissioner.

### I.  BACKGROUND

    On February 7, 2018, Plaintiff protectively filed his application for benefits, alleging that he became disabled on April 16, 2014. After initial administrative denials of his claim, Plaintiff appeared at an administrative hearing held on February 25, 2020.  Plaintiff, his mother, and a vocational expert, Donna J. Bardsley, testified at that hearing.

    The Administrative Law Judge issued an unfavorable decision on March 13, 2020.  He first concluded that Plaintiff had not engaged in substantial gainful activity since his application date.  Next, he found that Plaintiff suffered from severe impairments including borderline intellectual functioning, autism, and attention deficit hyperactivity disorder.  He further determined that Plaintiff's impairments, viewed singly or in combination, and whether severe or nonsevere, were not of the severity necessary to qualify for disability under the Listing of Impairments.

    Moving on to the next step of the inquiry, the ALJ found that Plaintiff had the residual functional capacity to perform work at all exertional levels.  However, he had to avoid production-paced work, could not tolerate concentrated exposure to unprotected heights or to

machines with moving mechanical parts, and could not drive a work vehicle. He was able to understand, remember, and carry out simple instructions, could make simple work-related decisions, could frequently interact with others, would be off task for 5% of the workday, and could tolerate few changes in a routine work setting.

The ALJ next determined that Plaintiff had no past relevant work. Taking his limitations into account, however, the ALJ found that Plaintiff could perform jobs like lumber sorter, store laborer, or vehicle or equipment cleaner, all of which can be done at the medium exertional level. He also determined that these jobs exist in substantial numbers in the national economy. The ALJ therefore concluded that Plaintiff was not under a disability as defined in the Social Security Act.

Plaintiff, in his motion for judgment, raises this issue: "The ALJ improperly made very specific RFC findings based on his lay interpretation of the medical evidence of record." (Doc. 21-1, at 1).

## II. THE KEY EVIDENCE

The Court will begin its review of the evidence by summarizing the testimony from the administrative hearing. It will then provide a summary of the most important medical records.

### A. The Hearing Testimony

Plaintiff, who was 20 years old as of the date of the hearing, first testified that he lived with his parents and his sister and that he did not have a driver's license. He had completed the twelfth grade and was currently working as a part-time dietary aide washing pots and pans. He had not had any other employment. Plaintiff said his work went well generally but he did have some small panic attacks at work. He was also doing an internship through school, which involved various tasks such as shredding papers or organizing items like lotions and deodorants, all under the supervision of a job coach.

In his spare time, Plaintiff liked playing video games and drawing, and he occasionally socialized with friends. He also did some household chores but did not do the family grocery shopping. He believed his most significant problems were his poor memory and being easily distracted.

Plaintiff's mother was the next witness. She said that Plaintiff struggled to get his work done in the allotted time. She also said he had trouble following directions and that he would not be able to live on his own. He had difficulty focusing and also had some anger issues. Lastly, he was not good at managing money. She testified that he had struggled in this way his entire life.

The final witness was the vocational expert, Donna Bardsley. She described Plaintiff's current job as kitchen helper, which was unskilled and performed at the medium exertional level. She was next asked questions about a person with Plaintiff's vocational profile who could work

at all exertional levels but who couldn't do fast-paced work like on an assembly line and who had to avoid concentrated exposure to unprotected heights and machines with moving parts. The person also could not drive vehicles at work, but could remember and carry out simple instructions and frequently interact with others. Lastly, the person would be off task 5% of the time. With those limitations, such a person could, according to the expert, do the job of kitchen helper and other medium jobs like lumber sorter, stores laborer, and vehicle or equipment cleaner. Those jobs could still be done if the person also was limited to making only simple work-related decisions and could tolerate only few changes in the work setting. Increasing the time off task to 10% would eliminate all the jobs but kitchen helper, though, and she testified that all of the jobs had a limit of one absence per month.

### B. The Relevant Records

The records include individualized education program (IEP) reports from Plaintiff's time in school. The most recent one shows, among other things, that his cognitive skills were in the borderline to low range but he could follow basic instructions although he needed additional processing time. Areas of concern included time management and communication skills. He also needed additional time to complete assignments and occasional reminders to stay on task. A teacher evaluation done in 2017 noted that Plaintiff had some difficulty concentrating for an acceptable length of time and stated that he would have trouble with the pace of a job were he to be employed and would need job support even for part-time work.

Plaintiff's medical records contain diagnoses of ADHD and other pervasive developmental disorders. He was taking medication to help keep his symptoms under control. Other portions of the medical records were essentially unremarkable.

### C. Expert Opinions

Plaintiff underwent a consultative psychiatric evaluation on March 23, 2018, performed by Dr. Ransom. He was accompanied by his mother, who told Dr. Ransom that Plaintiff did not have any mental health difficulties apart from his ADHD. His memory skills - immediate, recent, and remote - were all intact. Dr. Ransom thought that Plaintiff could deal appropriately with work instructions, could interact with others, and had adequate concentration and attention to do work-related tasks. (Tr. 295-98).

### III. STANDARD OF REVIEW

The Court of Appeals for the Second Circuit has stated that, in reviewing a final decision of the Commissioner of Social Security on a disability issue,

> "[i]t is not our function to determine de novo whether [a plaintiff] is disabled." *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir.1996). Instead, "we conduct a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision and if

the correct legal standards have been applied." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir.2009); *see also* 42 U.S.C. § 405(a) (on judicial review, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive.").

Substantial evidence is "more than a mere scintilla." *Moran*, 569 F.3d at 112 (quotation marks omitted). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (quotation marks omitted and emphasis added). But it is still a very deferential standard of review—even more so than the "clearly erroneous" standard. *See Dickinson v. Zurko*, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999). The substantial evidence standard means once an ALJ finds facts, we can reject those facts "only if a reasonable factfinder would have to conclude otherwise." *Warren v. Shalala*, 29 F.3d 1287, 1290 (8th Cir.1994) (emphasis added and quotation marks omitted); *see also Osorio v. INS*, 18 F.3d 1017, 1022 (2d Cir.1994) (using the same standard in the analogous immigration context).

*Brault v. Soc. Sec. Admin., Com'r*, 683 F.3d 443, 447–48 (2d Cir. 2012)

## IV. DISCUSSION

Plaintiff's sole argument, as noted above, is that the ALJ based the residual functional capacity finding on a lay interpretation of the evidence, something which may, under some circumstances, be impermissible under applicable law. *See, e.g., Morseman v. Astrue*, 571 F. Supp. 2d 390, 397 (W.D.N.Y. 2008) ("the ALJ cannot substitute his own lay opinion in place of established acceptable medical authorities or treating sources."). This Court has also said, however, that an ALJ "is entitled to weigh all of the evidence available to make an RFC determination that is consistent with the record as a whole...." *Reithel v. Comm'r of Soc. Sec.*, 330 F. Supp. 3d 904, 912 (W.D.N.Y. 2018). In order to determine whether the ALJ properly followed the law here, the Court will first describe the ALJ's decision-making process in some detail.

After determining that Plaintiff had severe impairments but did not qualify for benefits under the Listing of Impairments, the ALJ concluded that Plaintiff's testimony about disabling symptoms was not entirely consistent with the evidence, including the daily activities in which Plaintiff engaged, including his work and his ability to help around the house and to get along with others. (Tr. 21-22). Turning to the objective evidence, the ALJ observed that the school records showed that Plaintiff was "working up to capacity, complet[ed] assignments in a reasonable length of time, [was] organized, ma[de] friends, and [was] liked by peers." (Tr. 22). Treatment records indicated normal mood, appropriate affect, coherent thought processes, and intact insight and judgment. The ALJ then reviewed the essentially normal findings made by Dr. Ransom during the psychological evaluation and additional normal findings made at an office

the correct legal standards have been applied." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir.2009); *see also* 42 U.S.C. § 405(a) (on judicial review, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive.").

Substantial evidence is "more than a mere scintilla." *Moran*, 569 F.3d at 112 (quotation marks omitted). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (quotation marks omitted and emphasis added). But it is still a very deferential standard of review—even more so than the "clearly erroneous" standard. *See Dickinson v. Zurko*, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999). The substantial evidence standard means once an ALJ finds facts, we can reject those facts "only if a reasonable factfinder would have to conclude otherwise." *Warren v. Shalala*, 29 F.3d 1287, 1290 (8th Cir.1994) (emphasis added and quotation marks omitted); *see also Osorio v. INS*, 18 F.3d 1017, 1022 (2d Cir.1994) (using the same standard in the analogous immigration context).

*Brault v. Soc. Sec. Admin., Com'r*, 683 F.3d 443, 447–48 (2d Cir. 2012)

## IV. DISCUSSION

Plaintiff's sole argument, as noted above, is that the ALJ based the residual functional capacity finding on a lay interpretation of the evidence, something which may, under some circumstances, be impermissible under applicable law. *See, e.g., Morseman v. Astrue*, 571 F. Supp. 2d 390, 397 (W.D.N.Y. 2008) ("the ALJ cannot substitute his own lay opinion in place of established acceptable medical authorities or treating sources."). This Court has also said, however, that an ALJ "is entitled to weigh all of the evidence available to make an RFC determination that is consistent with the record as a whole...." *Reithel v. Comm'r of Soc. Sec.*, 330 F. Supp. 3d 904, 912 (W.D.N.Y. 2018). In order to determine whether the ALJ properly followed the law here, the Court will first describe the ALJ's decision-making process in some detail.

After determining that Plaintiff had severe impairments but did not qualify for benefits under the Listing of Impairments, the ALJ concluded that Plaintiff's testimony about disabling symptoms was not entirely consistent with the evidence, including the daily activities in which Plaintiff engaged, including his work and his ability to help around the house and to get along with others. (Tr. 21-22). Turning to the objective evidence, the ALJ observed that the school records showed that Plaintiff was "working up to capacity, complet[ed] assignments in a reasonable length of time, [was] organized, ma[de] friends, and [was] liked by peers." (Tr. 22). Treatment records indicated normal mood, appropriate affect, coherent thought processes, and intact insight and judgment. The ALJ then reviewed the essentially normal findings made by Dr. Ransom during the psychological evaluation and additional normal findings made at an office

visit later in 2018. He then concluded that Dr. Ransom's opinion - that Plaintiff did not have any mental limitations - was not persuasive because it conflicted with other evidence which "indicated difficulty concentrating, anxiety, worry, problems paying attention, and difficulty remembering," all of which affected Plaintiff's work-related functioning. (Tr. 23). The ALJ concluded that all of the evidence, taken together, supported a residual functional capacity finding which basically limited Plaintiff to following simple instructions and doing work which was not fast-paced or which involved exposure to workplace hazards.

According to Plaintiff, the detailed RFC determination made by the ALJ, which did not track any of the expert opinions (the state agency reviewer did not believe Plaintiff had any severe impairments), was simply "invented out of whole cloth." Plaintiff's Memorandum, Doc. 12-1, at 15. In particular, Plaintiff contends that there was no support for the finding that he would be off task for only 5% of the workday, and that had the ALJ set that percentage higher, he might well have concluded that Plaintiff was disabled. The Commissioner's response to this argument is that Plaintiff has failed to point out any evidence showing that he had limitations more severe than those found by the ALJ and that the ALJ's finding bears a reasonable relationship to the totality of the evidence, including Plaintiff's own testimony, his mother's testimony, and the educational records.

A very similar challenge was presented to this Court in *Christopher H. v. Comm'r of Soc. Sec.,* 2022 WL 282813 (W.D.N.Y. Jan. 31, 2022), a case relied on by the Commissioner. There, the Court said, at *4, that

> Plaintiff's challenge is not grounded in any conflicts in the record evidence or in any evidence demonstrating or suggesting that his limitations are greater than those assessed by the ALJ. In fact, the medical opinions in the record do not conflict with the ALJ's RFC findings. The burden is on plaintiff, not the Commissioner, to establish that he suffers from limitations resulting in a restricted RFC. *See Mitchell v. Colvin*, 2015 WL 3970996, *4 (W.D.N.Y. 2015) ("[i]t is, however, [p]laintiff's burden to prove his RFC"); *Williams v. Berryhill*, 2018 WL 987257, *5 (N.D.N.Y. 2018) ("[t]he plaintiff bears the burden of producing evidence to establish any functional limitations that would prevent him or her from engaging in substantial gainful activity").

Similar to this case, the ALJ in *Christopher H.* did not assign controlling weight to any of the expert opinions, and none of them specifically concluded that Plaintiff would be off task for up to 5% of the workday, which was one of the limitations imposed by the ALJ. The Court found, however, that such a limitation was supported by certain findings recited in one of the expert opinions and also by "plaintiff's own testimony concerning his difficulties with concentration and communication," *id.* at *6. The ALJ's decision was therefore affirmed.

*Christopher H.* is not the only case reaching a similar conclusion. For example, in *Andre J. v. Kijakazi,* 2021 WL 5074719 (W.D.N.Y. Nov. 2, 2021), this Court found nothing improper in the fact that "the ALJ relied, in formulating the 5% additional time off-task, on Plaintiff's

testimony and medical evidence of Plaintiff's activities of daily living." *Id*. at *5.  All of these decisions are consistent with the principle set out above in *Reithel v. Comm'r of Soc. Sec.*, 330 F. Supp. 3d 904, 912 (W.D.N.Y. 2018), that the ALJ may make RFC decisions which enjoy substantial support in the record even if they do not exactly track the medical opinions of record.

Here, given the fact that the ALJ credited the lay evidence to some extent and found that Plaintiff had functional limitations that went beyond what Dr. Ransom opined, there was a basis for his findings.  The fact that Plaintiff was able to work at a part-time job successfully with few interruptions in his tasks stemming from his mental limitations provided additional support for the ALJ's finding that any deficit in staying on task was not severe enough to be work-preclusive.  The same is true for the other limitations which the ALJ incorporated into the residual functional capacity finding, such as the need to avoid workplace hazards - which was based on Plaintiff's testimony and other evidence supporting a limitation on paying attention - and the limitation to simple instructions, which was based on Plaintiff's academic records.  Overall, the Court finds that substantial evidence supports the ALJ's decision and that no errors of law were committed in the decision-making process.

### B. Additional Evidence

After the briefing on the motions for judgment on the pleadings were complete, Plaintiff moved for leave to submit additional evidence, contending that the evidence in question is "new and material" and therefore would support a remand under 42 U.S.C. §405(g), sentence six.  That new evidence - some of which is now in the record as exhibits to the parties' filings on this issue - consists of a subsequent favorable decision on a later application for benefits which found Plaintiff to be disabled as of March 14, 2020.  Plaintiff asks this Court to allow the entire record compiled in connection with that favorable decision to be filed, arguing that "[t]he underlying rationale provided for the approval of Plaintiff's SSI claim cited evidence both prior to and after the issuance of the ALJ's denial" in this case, raising the possibility "that the ALJ would have made a different decision had he had access to all of the records before the disability analyst relevant to the subsequent application."  (Doc. 16-1).  The Commissioner responds that the subsequent decision is not, itself, evidence of disability - an assertion borne out by the relevant case law - and that only one item of evidence considered by the disability analyst relates to the period under consideration by the ALJ, making it improbable that he would have reached a different decision based on that evidence.

The new disability determination cites to the evidence which was considered.  It consists of a number of documents which post-date the ALJ's determination, including, most significantly, a new diagnosis of schizophrenia and a number of limitations arising out of that disorder, many of them marked, and a new evaluation by a state agency psychologist, Dr. Dekeon.  As the Commissioner argues, there appears to be almost no overlap in the evidence presented in support of the new application and the evidence before the ALJ, and the award of benefits appears to be based on the new diagnosis of schizophrenia and the new state agency opinion.  The Court does not believe that Plaintiff has, on this record, made a sufficient showing that this evidence would cause the ALJ to rethink his decision that Plaintiff had not demonstrated

a disability on or before the date the decision was issued.  That being so, the Court will deny the motion to submit additional evidence.

## V.  CONCLUSION AND ORDER

For the reasons set forth in this Opinion and Order, the Court **DENIES** Plaintiff's motion for judgment on the pleadings (Doc. 13) and his motion to submit additional evidence (Doc. 16), **GRANTS** the Commissioner's motion for judgment on the pleadings (Doc. 14), and **DIRECTS** the Clerk to enter judgment in favor of the defendant Commissioner.

<u>/s/ Terence P. Kemp</u>
**United States Magistrate Judge**